# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HADASSAH FEINBERG, et al.,** | : | **CIV. NO. 1:25-CV-768** |
| | : | |
| **Plaintiffs,** | : | **(Judge Saporito)** |
| | : | |
| v. | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DAUPHIN COUNTY CHILDREN AND YOUTH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

This matter comes before the Court on a letter request by Hadassah Feinberg that we appoint counsel to represent her minor children in this case. (Doc. 77). This request arises in a decidedly unusual factual setting. Feinberg initially pursued this case *pro se* in her name and in the names of her children. After being advised that she could not advance claims on behalf of third parties as a *pro se* litigant, Feinberg procured the assistance of an attorney from Florida who entered an appearance on behalf of all plaintiffs. That Florida attorney, in turn, secured local counsel.

Within the past week a bizarre series of events have unfolded. On November 19, 2025, local counsel for the plaintiff filed a motion to withdraw his appearance. (Doc. 74). The motion was supported by an extraordinary and detailed factual recital including averments that "Ms. Feinberg had procured [co-counsel's] imprisonment

1

for eight days in a Florida jail," and the revelation that local counsel recently "discovered that Ms. Feinberg has made accusations that Governor Josh Shapiro had engaged in a conspiracy to engineer the assassination attempt directed at then-former President Trump in Butler, PA in July, 2024. " (Doc. 74 ¶¶ 21, 22). On November 20, 2025, we granted this motion, finding that "it is difficult to imagine an event which would more thoroughly undermine the trust relationship that must exist between attorneys and a client than the imprisonment of a lawyer, allegedly instigated by the client." (Doc. 75).

    At 1:52 a.m. on Sunday, November 23, 2025, a *pro se* submission was then emailed by the plaintiff to our chambers email account. In this submission the plaintiff identified herself as Hadassah Harris, and averred that she was now the spouse of lead counsel in this case. Ms. Feinberg-Harris also confirmed that she had instituted legal proceedings against her attorney-husband. Most recently, the plaintiff alleges that she has obtained an injunction which forbids her spouse, and lead counsel, from communicating with her and her family, a circumstance which seems to make lead counsel's continued representation of the plaintiffs in this case impossible. (Doc. 77). In light of these developments, we have directed the plaintiff's spouse-attorney to either address these issues explaining why he does not labor under an inherent conflict given the legal actions instigated by his client-spouse

2

against him or submit a motion to withdraw on or before **December 1, 2025**.

In the meanwhile, Feinberg now seeks appointment of counsel for the remaining plaintiffs in this case.[1] She makes this request, however, at a time when the viability of these legal claims is in doubt, and we are considering multiple motions to dismiss this case. While we appreciate the plaintiff's interest in securing court-appointed counsel, we also recognize that there is neither a constitutional nor a statutory right to counsel for civil litigants. Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993). Instead, 28 U.S.C. § 1915(e)(1) simply provides that "[t]he court may request an attorney to represent any person unable to employ counsel." Under §1915(e)(1), a district court's appointment of counsel is discretionary and must be made on a case-by-case basis. Tabron, 6 F.3d at 157-58. In Parham, the United States Court of Appeals outlined the standards to be considered by courts when reviewing an application to appoint counsel pursuant to 28 U.S.C. § 1915(e)(1). In passing on such requests we must first:

> [D]etermine[] that the plaintiff's claim has some merit, then [we] should

---

[1] While we have allowed plaintiff's lead counsel until December 1 to withdraw as counsel or explain why his withdrawal is not necessary, we are constrained to observe that events may be overtaking this choice by counsel since Ms. Feinberg-Harris' latest submission clearly indicates that she intends to fire her spouse as her counsel in this case.

3

> consider the following factors: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; [and] (6) whether the plaintiff can attain and afford counsel on his own behalf.

Parham v. Johnson, 126 F.3d at 457. There is yet another practical consideration which must be taken into account when considering motions for appointment of counsel. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Finally, in addressing this issue, we must take note of the significant practical restraints on the district courts' ability to appoint counsel: the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. We have no doubt that there are many cases in which district courts seek to appoint counsel but there is simply none willing to accept appointment. It is difficult to fault a district court that denies a request for appointment under such circumstances.

Tabron v. Grace, 6 F.3d 147, 157 (3d Cir. 1993). Mindful of this consideration, it has been emphasized that volunteer lawyer time is extremely valuable. Hence, district courts should not request counsel under § 1915(d) indiscriminately. As the Court of Appeals for the Second Circuit has warned: "Volunteer lawyer time is a precious commodity. . . . Because this resource is available in only limited quantity,

4

every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause. We cannot afford that waste." Cooper v. A. Sargenti Co., 877 F.2d 170, 172 (2d Cir. 1989). See also Tabron v. Grace, 6 F.3d at 157.

In this case, our analysis of these factors leads us to conclude that counsel should not be appointed in this case at the present time. Appointment of counsel would be premature since we have not had the opportunity to fully consider the threshold factor we must examine: the arguable merits of the plaintiffs' claims which are the subject of pending motions to dismiss. Taking all of these factors into account we DENY this request to appoint counsel, (Doc 77), at this time without prejudice to re-examining this issue as this litigation progresses.

SO ORDERED, this 25th day of November 2025.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge